UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:10CR 17 RWS |
| ) | |
| RAYMOND DICKERSON, ) | |
| ) | |
| Defendant(s). ) | |

## REPORT AND RECOMMENDATION

In his motion to suppress and memoranda, defendant asks for the suppression of any statements he made to law enforcement and physical evidence seized on the grounds that physical evidence seized before a search warrant was issued and physical evidence seized as a result of the execution of the search warrant were the result or fruit of an unlawful entry into the defendant's residence. Mr. Dickerson alleges that "All the searches of August 19th and statements of August 19th and 20th depend on the lawfulness of the seizure of the pistol exposed in the drawer when opened by Dickerson."

Although the government claims the original entry onto defendant's property was by consent, defendant argues that the "Consent is not a valid consent because it was based on a deception with respect to its purpose or viewed objectively, the search exceeded the boundaries of any consent given." Further, the defendant urges, "The 'deceit or trickery' alleged here is the purpose for obtaining consent to enter a person's home. First, viewed objectively, there was no investigatory purpose on August 19th to be in Dickerson's home."

**Factual Background**

On August 10, 2009, the defendant, Raymond Dickerson, reported to the Poplar Bluff, Missouri, Police Department that there had been an attempted robbery at his residence located at 329 North 5th Street. Dickerson identified Tawania Allen, Ronnie Allen and Bobby Joe Blackmon as suspects in this offense. During the course of the initial investigation, Officer Johnson of the Poplar Bluff Police Department spoke with Tawania Allen. During their conversation, Allen denied participating in any offense and suggested to the officers that they should check Dickerson's residence for firearms. This information was relayed to Detectives Phelps and Sutton.

On August 19, 2009, following up on the investigation, Detectives Phelps and Sutton contacted Raymond Dickerson at 329 North 5th Street in Poplar Bluff, Missouri. Detective Phelps knew that Dickerson was a convicted felon, having previously looked into Dickerson's criminal history as a result of a complaint which had been filed with the department that Dickerson was an unregistered sex offender. Officers also were aware that the residence at 329 North 5th Street was a known "crack" house.

Upon arrival at Dickerson's residence, the officers stated that they were there to follow up on the robbery complaint and asked Mr. Dickerson if they could come inside and talk with him. Mr. Dickerson stated, "yes," and granted the officers entry into his residence. Dickerson described the events of the attempted robbery to Officers Phelps and Sutton and took them throughout the house where the events were alleged to have occurred. At one point, Detective Sutton asked the defendant if he had any firearms, ammunition, or stolen property in the house. The defendant stated, "no," and then opened a kitchen drawer to show the officers what he said were receipts for the items the officers had observed throughout the house. The drawer did, in fact, contain a number of receipts.

However, when Dickerson opened the drawer, in addition to the receipts, the officers observed the handle of a black 9 mm. semi-automatic pistol. Dickerson was asked if he was a convicted felon, to which he stated,"Yes." The pistol was seized and Dickerson was then detained.

At this time, the officers read Dickerson his Miranda warnings and the defendant stated he understood those warnings. Dickerson was asked if there were other weapons or ammunition in the residence, and he stated that he had a box of ammunition for the pistol in a cabinet above the drawer which held the pistol. Officers then immediately retrieved the box of 9 mm. ammunition from the cabinet. Dickerson stated that there were no other firearms in the residence. Officers asked Dickerson for consent to search the rest of the residence, and Dickerson refused to consent to the search. When asked where the pistol came from, Dickerson stated that it was loaned to him by a friend, whom he refused to identify. A check of the serial number on the pistol disclosed that the pistol had been reported stolen to the Butler County Sheriff's Office on September 13, 1999.

Dickerson had approximately $800 on his person. When asked about his money, Dickerson stated that the cash was his recent winnings from gambling. Dickerson directed the officers' attention to a pair of dice in another kitchen drawer, saying that they were the dice he used to win the cash.

There were other individuals who had been present in the residence while the officers were speaking with the defendant. The officers conducted a protective security sweep at that time. The defendant was removed from the house before the sweep. During the course of the sweep, officers observed a .30-.30 caliber Marlin rifle leaning against a wall in the bedroom.

Two officers remained at the residence while Detective David Sutton applied for and obtained a search warrant for the residence from Judge Bloodworth of the 36th Judicial Circuit.

Immediately following the issuance of the warrant, the search warrant was executed. During the execution of the search warrant, officers located the following items of evidence:

      One round of 9 mm. ammunition
      One box of Winchester, .30-.30 caliber ammunition
      One Winchester, .30-.30 caliber rifle round
      One Diablo digital scales
      One can of Remington gun oil
      One box of Winchester, 12 gauge shotgun shells
      One 3-9x40 firearm scope
      One Arisaka, bolt-action rifle
      One Stevens brand double barrel shotgun
      Winchester brand foam earplugs

On August 20, 2009, Special Agent John Taylor of the Bureau of Alcohol, Tobacco, Firearms and Explosives and Detective Sutton went to the defendant's residence in Poplar Bluff once again to interview Mr. Dickerson with regard to the firearms seized on August 19, 2009. The officers advised Dickerson that they were not there to arrest him, and that he would not be arrested on that date. Dickerson was neither arrested nor detained. Special Agent Taylor asked Dickerson if he remembered and understood his rights as explained to him on August 19th. Dickerson stated that he did. Dickerson then advised the officers, in response to their questioning, that the pistol had been loaned to him by a friend whom he identified as "Lonnie." He stated that while he may have had some hunch that it was stolen, he had no specific information to make him believe that. He stated, "Black men don't buy guns." Dickerson first advised the officers that "Lonnie" had loaned him the firearm to have as protection after Dickerson's house had been broken into recently. Dickerson was asked if the firearms recovered from the house were guns he had owned for some time, and Dickerson stated, "No," advising that he had acquired them in a drug transaction approximately three weeks prior to the interview. He stated that a white female by the name of "Barbie" had traded the

guns to him in return for two "stones." He stated this occurred on C Street in Poplar Bluff, Missouri. Dickerson also admitted that he was aware that the 9 mm. pistol was in the kitchen drawer. He said he had it when he heard the officers knock on the door. When he saw it was law enforcement, he placed it in the drawer, answered the door and simply forgot that he had placed it there. Dickerson was not placed under arrest or taken into custody at that time.

## Discussion

First, with respect to the defendant's claim that the entry of Officers Phelps and Sutton was tainted by "deceit or trickery," even if that were true, that would generally not invalidate the consent. Consent to search or enter upon a premises has been upheld as valid despite officers' deception as to their identity or purpose. The government points to: United States v. Raines, 536 F.2d 796 (8th Cir. 1976) (consent to enter valid even though agent misrepresented he was a friend of defendant's drug associate in order to gain entry); United States v. Shigermura, 682 F.2d 699 (8th Cir. 1982) (consent to enter valid even though agent posed as a buyer and represented he was sent there by an associate); and United States v. Trower, (unpublished, 285 Fed.Appx. 321, 323, 2008 WL 2778792 (C.A. 8 (Mo.)); citing United States v. Carter, 884 F.2d 368, 375-75 (8th Cir. 1989) and United States v. Yang, 345 F.3d 650, 654-55 (8th Cir. 2003), (consent to enter valid even though officers asked for consent to enter to look for evidence of a note, when arguably officers' intent was to look for marijuana based on an informant's tip). Trower is a case squarely on all fours.

The government also cites cases in which an undercover police officer's entry by consent, though obtained by deception, was not prohibited by the Fourth Amendment: Shigermura, supra, at 706, citing Lewis v. United States, 385 U.S. 206, 210-12, 87 S.Ct. 424, 427-28, 17 L.Ed.2d 312 (1966); United States v. Wright, 641 F.2d 602, 604-05 (8th Cir.), cert. denied, 451 U.S. 1021, 101

S.Ct. 3014, 69 L.Ed.2d 394 (1981); and United States v. Collins, 652 F.2d 735, 739 (8th Cir. 1981), cert. denied, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

If deception reaches the point of coercion, it can vitiate a consent. See United States v. Reinholz, 245 F.3d 765, 780 (8th Cir. 2001) (statements following an illegal arrest suppressed.) Or if a consent to search is given in response to a false statement that the officers have a search warrant, that consent is not voluntary because it is given in acquiesence to authority. See Bumper v. North Carolina, 391 U.S. 543, 546-49, 88 S.Ct. 1788 (1968).

In Mr. Dickerson's case neither coercion nor a false claim of authority was involved.

Secondly, the intention of Officers Phelps and Sutton is irrelevant to the propriety of the request for consent to enter the Dickerson property. In United States v. Clayton, 210 F.3d 841, 844 (8th Cir. 2000), the Eighth Circuit, relying on the Whren case, held:

> In Whren v. United States, the Supreme Court stated that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Although Whren specifically concerned a traffic stop, we have held that this rule "is applicable to all police activities for which probable cause is required." United States v. Clarke, 110 F.3d 612, 613 (8th Cir. 1997); see also United States v. Hathcock, 103 F.3d 715, 719 (8th Cir. 1997).

In the instant case, probable cause was not even required. It was a case of a simple request.

As a matter of fact, Officer Sutton's request to enter was appropriate and the reason given was true. As he testified on direct and cross-examination, he did go to the Dickerson residence "to follow up on the robbery complaint." (Tr. 8-9, 36). Sutton had been assigned the robbery complaint and it was his investigation. It would have been very odd if he had not talked to the victim of the alleged robbery and had only read reports of the investigation by other officers. (He did that, too.) Sutton testified:

> We did need to close out that robbery complaint, either by not being able to develop enough information to make charges, developing a further inconsistent statement, or actually getting a better description and better evidence to actually charge the suspects in it.

(Tr. 36).

From the visit to the defendant's residence, the officers learned additional information. They learned there was a fourth suspect in the robbery, a "June Bug" whom Sutton knew as James Johnson. (Tr. 36-37). Dickerson showed the officers where he had been sitting when the suspects came in. He walked through the robbery by taking the officers through the house as Mr. Dickerson explained his version of what occurred. (Tr. 11, 12).

Officer Sutton was speaking accurately when he told Mr. Dickerson that they were there to investigate the robbery. One of the suspects named by Dickerson, Tawania Harris, had been interviewed and denied any part in the robbery but did mention the guns in Dickerson's home. Either Ms. Harris was lying about her part in the robbery or the defendant was. She may have been lying about the guns in Dickerson's home. If she was lying about the guns, that would have cast doubt on her denial of her participation in the robbery. If she were telling the truth about the guns, that would not have meant she was not one of the robbers but her credibility might have been improved.

It is also true that "part" of Sutton's reason for going to Dickerson's home was to investigate the allegation of Sutton's possession of weapons but, as previously mentioned, an officer's intentions in seeking a legitimate criminal investigation are irrelevant. Whren, supra; Clarke, supra; Hathcock, supra; Trower, supra.

Lieutenant Sutton returned the next day, this time with Special Agent John Taylor of the ATF, whom he introduced. He told Mr. Dickerson they were there "to talk to him about the weapons that

were found in his residence and asked if we could come in and talk to him," (Tr. 26) Mr. Dickerson said, "Yes" and stepped back into the residence. Id. The evidence is that on August 20, Mr. Dickerson did not object to talking about the weapons (even with an ATF agent) but consented to Sutton and Taylor coming in and questioning him about the weapons previously found.

The officers asked Dickerson if he remembered the rights that Sutton had explained to him the day before and whether he understood them and "Raymond answered 'yes' he did." (Tr. 27). Taylor explained that Dickerson was not under arrest and that he would not be arrested. Sutton testified that the defendant was not under arrest at the time Sutton was talking to him and he was not arrested that day. Neither Sutton or Taylor made any promises or threats to Dickerson in exchange for his talking to the officers. Sutton testified that Dickerson did not appear to be intoxicated or under the influence of a controlled substance. Dickerson's answers appeared to be responsive to Sutton's questions.

## Seizure of Weapons in Plain View

As stated in the Factual Background, on August 19, 2009, on the day Detectives Sutton and Phelps first went to Dickerson's home, Mr. Dickerson reenacted the robbery, leading the officers through the rooms of the house ending up in the kitchen. At that point, Lieutenant Sutton asked if there were any firearms, ammunition or stolen property in the house. Mr. Dickerson said, "No, that he had receipts for everything, and he stepped over and opened the drawer" of one of the kitchen cabinets. (Tr. 12). Sutton testified that he (Sutton) had not asked defendant to open the drawer. Asked what happened then, Sutton testified, "As he opened the drawer, we noticed that the drawer also contained a semi-automatic pistol." (Tr. 13). Detective Phelps took possession of the pistol. Sutton then asked the defendant, "Aren't you a convicted felon?" and the defendant responded "Yes."

Id. Sutton then administered the Miranda warnings and asked if Mr. Dickerson understood his rights. Dickerson replied he did. Sutton then asked if there were any more firearms or ammunition in the house and the defendant responded by saying there was ammunition in a cabinet above the drawer where the officers found the pistol. (Tr. 14-15).

Sutton testified that Dickerson was 2½ feet from the cabinet which held the ammunition. No weapons were drawn nor was Mr. Dickerson in handcuffs. He did not appear to be intoxicated or to have his faculties impaired in any way. His answers were responsive to the questions asked. No threats or promises were made to Mr. Dickerson. (Tr. 15-16).

Sutton asked Dickerson if he would consent to a search of his residence. Dickerson responded, "No." It was then that the officers decided to seek a search warrant. (Tr. 16-17).

Two of the officers were to remain to secure the residence. Since there had been two women who had been seen in the home in addition to Mr. Dickerson, the decision was made to conduct a security sweep for officer safety. When Mr. Dickerson had conducted the tour of the home, four doors to interior rooms were closed. The sweep took one and a half to two minutes. During the sweep, a .30-.30 caliber Marlin lever action rifle was observed in plain view in Mr. Dickerson's room. (Tr. 18-19). It was seized.

When the handgun and the .30-.30 rifle were seized, the officers were in places where they were legally entitled to be. The incriminating character of the weapons was immediately apparent since the officers knew Mr. Dickerson was a convicted felon. The seizures were legal and valid. Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971); United States v. Varner, 481 F.3d 569, 572-73 (8th Cir. 2007); United States v. Gamboa, 493 F.3d 796, 807-08 (8th Cir. 2006).

## Conclusion

The court finds that on August 19, 2009, Officers Sutton and Phelps entered the residence of Raymond Dickerson by the consent of Mr. Dickerson. The officers were accompanying the defendant when he showed them through the house explaining how the robbery took place. They ended up in the kitchen. The officers were where they were legally entitled to be when Mr. Dickerson opened the drawer to show them receipts and inadvertently displayed the handgun he had placed there. The pistol, owned by a convicted felon, was in plain view, its incriminating character was immediately apparent and it was legally seized.

Other physical evidence seized as a result of the security sweep or the execution of the search warrant were legally seized and should not be suppressed.

Neither the physical evidence seized at the defendant's residence on August 19th nor statements by the defendant on either August 19th or August 20th were the result or "fruit of the poisonous tree," an illegal entry, as argued by the defendant.

The consent to enter on August 19th was not vitiated by coercion or false claims of authority.

Statements made by the defendant on August 19th and 20th, 2009, were made either when the defendant was not in custody or after the Miranda warnings were given.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements and Evidence Obtained by Search or Seizure (Document #20) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time

for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

                                                            /s/ Lewis M. Blanton
                                                        LEWIS M. BLANTON
                                                        UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of June, 2010.